PEDRO SALOM PIZÁ, Plaintiff and Appellee, *v.* SECRETARY OF THE TREASURY, Defendant and Appellant.

No. R-64-93.     Decided April 12, 1965.

*J. B. Fernández Badillo, Solicitor General,* and *Manuel Tirado Viera, Assistant Solicitor General,* for appellant. *Goldman & Santiago* for appellee.

Division composed of Mr. Acting Chief Justice Pérez Pimentel, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The taxpayer, Pedro Salom Pizá, is the owner of real estate located on Ponce de León Avenue, in Santurce, known as the Hotel Capitol. On the 1273-square-meter lot there are two buildings: one, a five-story building constructed in 1928, and the other, also a five-story building constructed in two steps, first the basement and two stories in 1951 and later the upper three stories in 1961.

For the fiscal year 1951–52, the beginning of the scientific assessment method, and for the following years up to 1957–58, the Secretary of the Treasury determined, under codification number 040 037 013 01 901, the assessed value of the property to be $202,880. This value was broken down on the tax receipts as follows: lot $37,300, buildings, $165,580. According to the assessment cards offered by the taxpayer, the $165,580 value was made up as follows: building No. 1, $82,690; building No. 2, $78,890; and machinery, $4,000.

When the first revision of the scientific assessment method was carried out in 1958, the assessed value was increased, as shown on the cards, as follows:

|  | 1951 | 1958 |
| --- | --- | --- |
| Lot | $ 32,300 | $ 61,850 |
| Building No. 1 | 82,690 | 105,490 |
| Building No. 2 | 78,890 | 100,360 |
| Machinery | 4,000 | 6,440 |

However, when the 1958–59 to 1961–62 tax receipts were issued under an identical codification which stated that they corresponded to two concrete buildings (2H), a $173,780 assessment value was determined, $61,850 of this amount corresponding to the lot and $111,930 to the buildings. A simple mathematical computation shows that at the time of assessment of the buildings for the purpose of issuing tax receipts only the value of building No. 1, $105,490, and that of the machinery, $6,440 were considered, and the value of building No. 2, $100,360, was completely ignored.

On October 2, 1961, the Secretary served upon the tax-payer additional tax receipts under codification number 040 037 013 01 002 for a concrete building with an assess-ment value of $100,360 for the years 1958–59 to 1960–61. Six days later the taxpayer was notified by an additional receipt of the assessment for the year 1961–62, under the identical codification number, with a $182,520 assessment for the same building. The $82,160 increase represents 70% of the addition of the three upper stories in building No. 2.[1]

The taxpayer, Salom Pizá, because he understood that this was a "retroactive" assessment of real property which had been "definitively" assessed—the original receipts issued by the Secretary were completely paid—instituted an appeal before the Superior Court, San Juan Part, requesting the cancellation of the additional receipts. He also contested the Secretary's power to issue notice of such receipts, "since no property was omitted in the assessment . . . nor were there new structures justifying the aforementioned retroactive receipts."[2]

The trial court sustained the complaint. The grounds for the decision appear in the two following paragraphs:

"From the receipts originally paid it appears that the tax was imposed on two structures, that is, the original one of 1929 and the annex of 1951. This would seem to be substantiated by the '901' codification appearing in the receipt.

"A reassessment of the property was made in 1957, and for the years in this complaint it appears from the receipts that the lot, the building erected in 1929, and the annex erected in 1951 (lot and 2H) were assessed in the aforementioned amount.

---

[1] For the year 1962–63 the real property was assessed at $402,560, distributed as follows: lot, $61,850; building No. 1, $105,490; building No. 2, $217,730; machinery, $17,490. Even though the taxpayer contested the assessment in a separate petition, he subsequently stipulated that the tax be determined on the basis of this assessment value.

[2] During the course of the litigation the taxpayer admitted the increase in the amount of $82,160 for the year 1961–62, which corresponded to the enlargement of building No. 2.

The additional assessment for the year 1961 refers to one structure (1H). It cannot be said that that structure is a different one than the one referred to on the receipts already paid by the taxpayer. On these receipts the property was assessed lower than intended, but all this was under the control of the Secretary. What was done in 1961 could have been prospectively done since the receipts were already paid, and on that date, and since 1951, the annex has been assessed. It was not omitted from assessment. This is a case of an assessment in an amount less than the one intended. In these cases assessment shall not be made retroactively."

The court, in a short resolution ruling on a request for reconsideration, ratified its criterion on the illegality of the additional receipts as follows:

"It cannot be sustained that the taxpayer, when he originally paid the receipt, did not pay for the lot and two buildings. The new receipt would be for an additional building. The taxpayer paid for the assessed lot and two buildings, but they were assessed in an amount less than the one intended. The receipts and the codification pointed out that the structures and the lot were assessed. The new receipt would be duplicity."

1. The applicable law is centralized in § 303 of the Political Code, 1902 ed., as subsequently amended,[3] 13 L.P.R.A. § 454, providing:

"Whenever the Secretary of the Treasury of Puerto Rico shall learn that any real property liable to taxation has been omitted from the assessment of property of any taxpayer for any fiscal year or years, beginning with the fiscal year 1901–02, he shall immediately cause the same to be assessed for the years for which such property has failed of assessment, shall add such

---

[3] The text in force substantially corresponds with that in the Act of March 14, 1907 (Sess. Laws, pp. 330, 337). The last amendatory law— No. 67 of June 16, 1954 (Sess. Laws, p. 356)—incorporated the provision making compulsory the remittance of surcharges when the taxpayer is not responsible for the failure of the property assessment, power which until then was discretional to the Secretary. Also, it added the last sentence referring to the limitation period for assessment and revision of assessment of personal property.

property to the tax rolls for such years, and shall proceed to the collection of the taxes appertaining to the same and of all the surcharges accruing on account of such taxes not having been paid promptly, in the same manner as he collects other taxes under this title; Provided, however, That where such property has failed to be assessed and taxed through no willful default of the owner, it shall be the duty of the Secretary of the Treasury to remit the surcharges in full. In all cases where property, real or personal, has been assessed for any fiscal year or years, but such assessment has been made in other than the name of the true owner or holder thereof, or has been so made as to be void, the Secretary of the Treasury of Puerto Rico shall cancel such assessment, eliminate the same from the tax rolls, and withdraw and cancel the tax receipts or bills corresponding to the same; and he shall proceed to assess such property and correct the tax rolls accordingly, and to collect such taxes as may be pending payment, appertaining to such re-assessment, in the same manner as is herein in this section provided for the assessment and collection of taxes on real property that have improperly failed of assessment. The Secretary of the Treasury or his agents in charge of property assessment shall have until up to the last day of the taxable year to assess and review the assessment of personal property for the taxable year involved."

■ In *García Commercial* v. *Sec. of the Treasury*, 80 P.R.R. 739 (1958), the power of the Secretary to assess and levy property taxes is fully discussed. Even though that case dealt specifically with personal-property taxes, everything connected with taxation of real property was considered by way of comparison. After stating that there is no limitation period inherently restricting the Secretary's power to assess and levy property taxes, we added that any limitation would have to rise from the Legislature and that in such case the limitation would operate as a prescription period. Then, mentioning § 303, we stated that "as to real property there is no limitation period whatever" yet, notices on personal property taxes must be served within the fiscal year for which the property is assessed and the tax levied. *A contrario sensu*, this limitation is not applicable to real property. "In effect,

upon authorizing *the retroactive assessment* of any omitted real property, said legal precept [§ 303] refers squarely to '... *real* property liable to taxation [that] has been omitted from the assessment of property of any taxpayer for any fiscal year or years.' " (At p. 747.) Thus, the contention that the Secretary's action in the case at issue refers to the assessment and levying of taxes in prior years and, as such is retroactive, has no force. Therefore, this retroactive matter appearing in the trial court's reasoning has no legal validity.

■ 2. Having disposed of the first assignment, the taxpayer contends, based on a literal interpretation of § 303, that since the aforementioned provision refers to "omitted" property, it does not apply to the case at issue, because it can be seen from the receipts issued that no property was actually "omitted," since the receipts made reference to two concrete buildings. He relies entirely on the probative force of the receipts sent him. But this position, accepted by the trial judge, ignores the reality shown by the assessment cards offered as evidence by the taxpayer himself, which satisfactorily explain that the difference is due to an error made when the information in the cards was transferred to the receipts. The erroneous reference to two concrete buildings in the receipts does not conclusively mean that building No. 2 has been considered.[4] The receipts have no purpose but to notify the taxpayer of a tax obligation. They do not lessen the presumption of the validity of the assessment cards or schedules, § 314 of the Political Code, 13 L.P.R.A. § 461. In this sense it may be considered a case of "omitted" property.

---

[4] In *Professional Realty* v. *Secretary of the Treasury, ante,* p. 208, we described, in general, the procedure followed for the first revision of the scientific assessment method carried out in 1957. We stated that it "considered market changes, especially those responding to progressive changes in the material order, and fundamentally to the increase in the construction costs, which was determined to be around 25%, to be precise 24.91%, including herein the increase in construction materials and labor."

We have examined the cases decided in other jurisdictions cited by the taxpayer. Independently of the existing differences among the statutes involved, the facts are distinguishable. Really the situation presented by this case is very peculiar.

■ It remains to say only that since the "omission" was the result of an administrative error, interest and surcharges can be collected only beginning from the notification date.

The judgment rendered by the Superior Court, San Juan Part, on February 12, 1964, shall be reversed and the complaint dismissed.